UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
09-CV-3614 (JMR/JJG)

| | | |
|---|---|---|
| Justin F. Sallis | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Catherine C. Pavlak, Elaine | ) | |
| Ashbaugh, John Harrington, | ) | |
| Susan Gaertner, City of St. Paul, | ) | |
| County of Ramsey County, and | ) | |
| DOES 1-6 | ) | |

This matter comes before the Court on defendants' motion to dismiss this action for failure to state a claim.[1]  Defendants' motion was directed to plaintiff's First Amended Complaint.  In the meantime, plaintiff has tendered a Second Amended Complaint and seeks leave to file it.  Defendants' Reply Brief argues plaintiff's Second Amended Complaint also fails to state a claim, and asks for its dismissal.

Substantively, the Second Amended Complaint, along with its predecessors, alleges plaintiff was arrested and charged for a crime he did not commit.  These very problematic events occurred because the crime-victim failed to give certain extraordinarily important information to the investigating officer.  The case poses the question:  Can an investigating officer, to whom incomplete information has been given, be held liable for the erroneous arrest

---

[1] Defendants Elaine Ashbaugh, Susan Gaertner, and Ramsey County have been dismissed without prejudice.  [Docket Nos. 5, 6, 7.]  Defendants "DOES 1-6," United States Marshals who arrested plaintiff in Chicago, do not appear to have been served, nor have they appeared.  [Docket No. 4.]

and charge of an innocent man?

Plaintiff's motion to amend is granted; defendants' motion to dismiss is granted.

I.  Background

The allegations of the Second Amended Complaint, including the attached exhibits,[2] are taken as true for purposes of this motion, and all reasonable inferences are drawn in favor of plaintiff, the non-moving party.

On March 15, 2009, a woman reported a rape.  The crime was investigated by defendant, Catherine Pavlak, a St. Paul, Minnesota, police officer.  The victim described her assailant as an African-American man, approximately 5' 9", 40 to 50 years old, "scruffy and possibly homeless," with salt-and-pepper facial hair, bad teeth, and a scar over his left eyebrow.  She said she would recognize him if she saw him again.

On March 16, 2009, Officer Pavlak interviewed the victim.  As part of the investigation, Pavlak asked the victim if she had

_____

[2] Ordinarily, if matters outside the pleadings are considered by the Court on a motion to dismiss under Rule 12(b)(6), the motion must be treated as one for summary judgment.  Fed. R. Civ. P. 12(d).  However, the Court may consider "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citations and quotations omitted).  Here, plaintiff attached several exhibits to his original Complaint; the First and Second Amended Complaints also refer to them, although they were not refiled.  The Court considers these exhibits as if they were incorporated into the allegations of the Second Amended Complaint.

recently had consensual sex with her boyfriend, and whether she could get a DNA sample to eliminate him. The victim indicated "she didn't tell him [her boyfriend] everything that happened" (Compl., Ex. A), and would not be able to get a DNA sample, but suggested his DNA might already be on file.

The victim did not, however, tell Officer Pavlak that on the night of March 14, 2009, hours before the rape, she had consensual sex with a man who was not her boyfriend – that person being plaintiff, Justin Sallis, a 26-year-old African-American man. The rape occurred the next morning after she left plaintiff's house.

Physical evidence taken from the victim was analyzed and yielded DNA. On March 26, 2009, St. Paul police showed the victim a photo lineup. She did not identify her attacker, but pointed to the photo she thought most closely resembled him. On April 2, 2009, the victim met with a police sketch artist. The artist produced a sketch which the victim believed strongly resembled her attacker. Officer Pavlak got a copy of the sketch. On April 4, the police located a man fitting this description. He became the prime suspect in the case, was detained, and provided a DNA sample.

On June 25, 2009, the DNA test came back. The sample taken from the victim included only one man's DNA. The DNA did not match either the victim's boyfriend or the prime suspect. The DNA did,

however, lead forensic investigators to a "cold hit,"[3] allowing them to match the DNA recovered from the victim to DNA contained in a convicted-offender database. The DNA matched a sample previously provided by Mr. Sallis. Further investigation revealed plaintiff had a prior felony conviction, an active misdemeanor warrant, and a Minneapolis address. Police visited plaintiff's listed address, but he no longer lived there.

Pavlak had access to plaintiff's criminal record, which showed him to be younger and taller than the victim's description, with no indication of a scar over his eye. Plaintiff denies any resemblance to either the sketch of the rapist or the photo the victim said most closely resembled her attacker.[4] On June 25, 2009, Pavlak contacted the victim and told her the police had identified a suspect, and that they were trying to locate him. Pavlak did not identify plaintiff by name.[5] Pavlak did not visit the victim again, or show her the suspect's photo. She did not discuss with the victim any discrepancies between the victim's description of her assailant and the suspect's physical

---

[3] "A 'cold hit' occurs when an unknown suspect is identified by matching an unknown DNA contributor's DNA profile from an unsolved crime with the DNA profile of a known contributor from a DNA database." State v. Bartylla, 755 N.W.2d 8, 12 n. 1 (Minn. 2008).

[4] The police sketch, photo array, and photos of plaintiff are exhibits to the complaint.

[5] When later shown the photographs of plaintiff, the victim indicated she knew him as "Jason."

description.  As a result, the victim did not realize the identified suspect was someone she actually knew.

After the police visited his listed address, plaintiff called and spoke to a Ramsey County deputy, asking why authorities were looking for him.  The call was made from a phone which police could not trace to a location.  The deputy told plaintiff he had an outstanding warrant, but not that he was suspected of rape.

When plaintiff could not be located at his Minneapolis address, Pavlak presented the case to the Ramsey County Attorney's Office.  Based in part on Pavlak's signed statement of probable cause, attached as an exhibit to the complaint, the prosecutor charged plaintiff with third-degree criminal sexual conduct, and sought an arrest warrant from the Ramsey County District Court.  On August 6, 2009, a Ramsey County District Judge found probable cause to issue a nationwide arrest warrant for plaintiff.

On August 17, 2009, the warrant was executed in Chicago, Illinois.  Plaintiff was arrested and held for 25 days in the Cook County Jail; he was thereafter extradited to Ramsey County, Minnesota.

When plaintiff was informed of the charges, he protested his innocence and said the charge was a mistake.  His defense lawyer arranged for his photo to be shown to the victim, who immediately recognized plaintiff and confirmed he was not the rapist. Plaintiff's defense lawyer presented this information to the court,

resulting in plaintiff's release after 39 days in custody.

On December 17, 2009, plaintiff filed his original complaint in this Court. He claimed he was entitled to damages from the City of St. Paul and its police officers, Ramsey County and its prosecutors, and "DOES 1-6," the United States Marshals who arrested him in Chicago. The Ramsey County defendants were voluntarily dismissed, and it appears "DOES 1-6" have not been served. On February 25, 2010, plaintiff filed his First Amended Complaint, alleging violations of the Fourth and Fourteenth Amendments, as well as state law claims for false arrest and false imprisonment. The First Amended Complaint was served by delivering a copy to defendants' counsel.

On March 2, 2010, the City of St. Paul and its police officers moved to dismiss. Plaintiff responded by seeking leave to file a Second Amended Complaint on April 16, 2010. Both motions are now before the Court.

II. <u>Analysis</u>

    A. <u>Motion to Amend</u>

Here, the Court is faced with both a motion to amend and a motion to dismiss the prior complaint for failure to state a claim. In such a case, the Court is advised to consider the motion to amend before deciding the motion to dismiss. <u>See</u> <u>Pure Country, Inc. v. Sigma Chi Fraternity</u>, 312 F.3d 952, 956 (8th Cir. 2002).

Under Rule 15(a), leave to amend "shall be freely given when

justice so requires." Fed. R. Civ. P. 15(a). Plaintiff's proposed Second Amended Complaint is identical to the First Amended Complaint, excepting only that it "expressly and unambiguously states that he is suing Defendant Pavlak in her individual and official capacities." Second Am. Compl. ¶ 2. Official capacity and individual capacity suits are "different causes of action." Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007). Accordingly, proper notice must be given to advise the defendant she is being sued as an individual. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).

The Court discerns no evidence of bad faith or undue delay nor any prejudice to defendants who have not yet filed an answer. Under these circumstances, the motion to amend is granted. At the same time, the Court finds the interests of justice and judicial economy will be served by treating defendants' motion to dismiss as if it were directed to the Second Amended Complaint.[6]

B.   Motion to Dismiss

To survive a motion to dismiss, a complaint must allege sufficient facts - accepted as true - to state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). A "plausible" claim allows a Court to "draw the reasonable inference that the defendant is liable for the

---

[6]For the remainder of this Opinion, the Second Amended Complaint will simply be referred to as the "complaint."

misconduct alleged." <u>Id.</u> Where the facts alleged in the complaint are "merely consistent with" liability, the claim is not plausible. <u>Id.</u>

In assessing whether a claim is plausible, the Court takes as true the complaint's factual allegations. <u>Id.</u> The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u>; <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The analysis is context-specific, requiring the Court to read the complaint as a whole. <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009). Because Officer Pavlak's actions underlie the case, it is her actions the Court first considers.

### 1. Federal Claims Against Officer Pavlak

To sustain his case, plaintiff must allege facts which, if true, show Officer Pavlak violated his constitutional rights while acting under color of law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). The complaint alleges Officer Pavlak violated his right to be free from unlawful seizures, in violation of the Fourth and Fourteenth Amendments. Plaintiff contends Pavlak's conduct violated the Fourth Amendment, while defendants assert the complaint really alleges a Fourteenth Amendment violation.

The Court finds plaintiff's claims are appropriately analyzed under the Fourteenth Amendment, rather than the Fourth. The distinction, however, is inconsequential: The Court finds the

complaint cannot be sustained under either theory.

### 1. Fourteenth Amendment Due Process

Failure-to-investigate claims are typically analyzed under the rubric of the Fourteenth Amendment's substantive due process clause. See, e.g., Baker v. McCollan, 443 U.S. 137, 144 (1979); Daniels v. Williams, 474 U.S. 327, 334 (1986); Brockinton v. City of Sherwood, 503 F.3d 667, 672 (8th Cir. 2007). One who wishes to maintain a substantive due process claim must allege actions which "violated one or more fundamental constitutional rights," and those actions must be "shocking to the contemporary conscience." C.N. v. Willmar Public Schools, Indep. Sch. Dist. No. 347, 591 F.3d 624, 634 (8th Cir. 2010). In the failure-to-investigate context, this means facts tending to show an officer "intentionally or recklessly failed to investigate, thereby shocking the conscience." Amrine v. Brooks, 522 F.3d 823, 834 (8th Cir. 2008); Cronan v. Fowler, 2010 WL 2802494, *3 (8th Cir., July 19, 2010). As a result, "[n]egligent failure to investigate does not violate due process." Brockinton, 503 F.3d at 672. Indeed, even allegations of gross negligence do not state a due process violation. Clemmons v. Armontrout, 477 F.3d 962, 966 (8th Cir. 2007).

There is absolutely no dispute Officer Pavlak's investigation resulted in a "cold hit" match of a person whose DNA was recovered from the victim after her rape. After this occurred, plaintiff ultimately accuses Officer Pavlak of having: (a) failed to

recontact the rape victim and have her look at the plaintiff's mug shot; (b) failed to tell the victim the name of the person whose DNA was matched to that recovered from her; and (c) applied to a neutral magistrate for an arrest warrant for a person whose physical description was incongruent with the victim's verbal description (or the police sketch) of the person she claimed to have raped her. Even assuming these accusations against Officer Pavlak to be true, and assuming them to be susceptible of proof before a jury, the Court holds, as matter of law, that Officer Pavlak's acts - or her asserted failures to act - do not rise to a violation of plaintiff's substantive due process rights, nor do they rise to the level of either intentional or reckless conduct, and they do not shock the conscience.

Officer Pavlak matched plaintiff's DNA to the DNA collected from the victim. She attempted to locate plaintiff at his Minneapolis address, but he had moved. She had no means of contacting plaintiff. There is no allegation Pavlak knew, or had any reason to suspect, the plaintiff and the victim had ever met. The Court cannot doubt that, if Pavlak had shown the victim plaintiff's photograph, both the criminal case and this case might have been avoided. But the United States Constitution does not mandate that she do so. The victim told the Officer the names of those with whom she had engaged in consensual sex - and she did not name the plaintiff. An inaccuracy between a victim's recalled

description of a person who committed a shocking and terrifying assault against her is a commonplace.  A follow-up visit to the victim is not mandated by the Constitution, and Officer Pavlak's failure to do so under these circumstances certainly does not shock the conscience.

The Court holds plaintiff has failed to state a claim for violation of the Fourteenth Amendment; this claim is properly dismissed.

2. <u>Fourth Amendment Unreasonable Seizure</u>

A Fourth Amendment claim is maintained "by alleging facts which indicate a seizure occurred and that it was unreasonable." <u>C.N.</u>, 591 F.3d at 633.  "Reasonableness is judged in light of the totality of the circumstances, however, and context is therefore critical" to the analysis.  <u>Id.</u>

An arrest without probable cause violates the Fourth and Fourteenth Amendments.  <u>See</u> <u>Beck v. Ohio</u>, 379 U.S. 89, 93 (1964).  "Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed."  <u>United States v. Rivera</u>, 370 F.3d 730, 733 (8th Cir. 2004).  Probable cause is judged "not from the perspective of an omniscient observer, but on the facts as they would have appeared to a reasonable person in the position of the

arresting officer." Id.

Here, of course, Pavlak was not the arresting officer. She composed the statement of facts presented to the county attorney, which became the affidavit used to support the arrest warrant application authorizing plaintiff's arrest. Notwithstanding these facts, and the fact that Officer Pavlak took no part in the Chicago, Illinois, arrest, plaintiff argues the Fourth Amendment applies, citing Hill v. Scott, 349 F.3d 1068 (8th Cir. 2003) and Kuehl v. Burtis, 173 F.3d 646 (8th Cir. 1999). The Court finds both of the proffered cases wholly inapposite, as each involves a warrantless arrest. There is no question a warrant was issued here.

In Kuehl, a store proprietor got into a fight with a customer. Police were called. The proprietor was arrested and charged. This occurred despite the responding officer's having spent only 20 seconds speaking to the proprietor. The officer would not listen to the proprietor, ignored evidence showing she was not the aggressor, and disregarded her small stature and the fact that her injuries were worse than those of her "victim." The officer ignored the account given by the only uninvolved witness to the entire altercation. Under those circumstances, the Eighth Circuit Court of Appeals held, notwithstanding the "substantial latitude" afforded a police officer in "interpreting and drawing inferences from factual circumstances," the officer must consider the totality

of the circumstances, including "evidence that tends to negate the possibility that a suspect has committed a crime." Kuehl, 173 F.3d at 650. "An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence" exists. Id. In short, "probable cause does not exist when a minimal further investigation would have exonerated the suspect." Id.

The Eighth Circuit addressed Kuehl in Hill v. Scott. There, a group of officers - coincidentally, including Officer Pavlak - arrested Hill in the doorway of his home, relying on a fellow officer's assurance that there was a warrant for Hill's arrest. The actual warrant-subject was a different person, with the same first and last names, similar in age and physical characteristics. By the time the other officer realized he was wrong about the person to be arrested, Hill had already resisted arrest and fled into his home; in the meantime, Pavlak and her partner arrested him for obstructing legal process. Hill, 349 F.3d at 1070-71.

The Eighth Circuit distinguished Hill from Kuehl, noting there were "no contradictions" between what the officers knew about the warrant and what they knew about Hill "that would have prompted a reasonable officer to investigate more fully" whether Hill was the person actually named in the warrant. Id. at 1072. The Court analogized the case to those where officers mistook an arrestee for the subject of a warrant. Because the descriptions were similar,

the court found the mistake was reasonable.  <u>Id.</u> at 1073.  Officer Pavlak and her colleagues were granted qualified immunity.

Assuming this case can be considered under the Fourth Amendment, the Court finds plaintiff has still failed to state a plausible claim.  <u>Kuehl</u> and <u>Hill</u> each involved officers in possession of the allegedly exculpatory evidence at the moment of arrest; the "minimal further investigation" was simply a proper consideration of all the evidence before them.

Here, Pavlak possessed highly credible evidence - in the form of a positive DNA match from a person who had not been excluded by the victim - which would lead a prudent officer to believe she had identified the person who committed the rape.  The rape had been promptly reported to the police.  A medical examination confirmed the rape and yielded DNA.  The evidence implicated plaintiff, and no one else.  The victim identified her boyfriend as her only sexual partner, thus ruling out his DNA.  Her statement, of course, did not rule out plaintiff, even though she had sex with him just hours before.

Absent any reason to doubt the victim's credibility, Pavlak was entitled to rely on the information the victim provided.  The only conceivably exculpatory evidence available to Pavlak when she applied for the warrant were discrepancies between the victim's description and the description of plaintiff in his prior criminal file.

The description differences did not negate probable cause. Certainly a law officer may reasonably rely on a victim's identification "absent some indication that the information is not reasonably trustworthy or reliable," Clay v. Conlee, 815 F.2d 1164, 1168 (8th Cir. 1987), but visual identifications are considered less reliable than DNA evidence. In fact, some courts have found law enforcement unreasonable when it relies on eyewitness accounts where objective evidence, such as a videotape of the suspect, is available. See Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1256 (10th Cir. 1998).

"A DNA profile is arguably the most discrete, exclusive means of personal identification possible." State v. Dabney, 663 N.W.2d 366, 372 (Wis. Ct. App. 2003). A "cold hit" on a lawfully obtained DNA sample, without more, may provide probable cause to issue an arrest warrant. See Williamson v. State, 993 A.2d 626, 643 (Md. 2010) (applying federal and Maryland law). Correspondingly, evidence that a suspect's DNA does not match is enough to negate probable cause for arrest.[7] See Burke v. Town of Walpole, 405 F.3d 66, 84 (1st Cir. 2005); Kuehl, 173 F.3d at 650 (no probable cause if "the officer is aware of DNA evidence and a videotaped account of the crime that conclusively establish the suspect's innocence.")

---

[7] Indeed, DNA exclusion may be enough to exonerate a defendant who has been convicted. See Karen Christian, "And the DNA Shall Set You Free": Issues Surrounding Postconviction DNA Evidence and the Pursuit of Innocence, 62 Ohio St. L. J. 1195, 1198 (2001).

In contrast, discrepancies between witnesses' descriptions, or between a description and a suspect's actual appearance, may not negate probable cause.  See Clay, 815 F.2d at 1168 (reasonable for officers to rely on victim's identification alone, and not interview other eyewitnesses before seeking a warrant); Tanqwall v. Stuckey, 135 F.3d 510, 516 (7th Cir. 1998) (discrepancies between victim's earlier description and later identification of a suspect do not negate probable cause to arrest).

So, even if the Court credits plaintiff's argument that the appearance discrepancies were significant, this Court holds they were not so disparate as to negate the probable cause conveyed by the positive DNA match.  Because the Court finds there was probable cause as a matter of law, plaintiff has failed to allege a plausible Fourth Amendment violation.

There is yet another basis to dismiss the complaint:  Officer Pavlak is entitled to qualified immunity.  Although qualified immunity is an affirmative defense, dismissal may be appropriate if "the immunity is established on the face of the complaint." Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996).  Such is the case here, where police officers executing a proper warrant are afforded qualified immunity.  See Malley v. Briggs, 475 U.S. 335, 344 (1986).  "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." Id.

at 345.

Officers are entitled to qualified immunity for otherwise unlawful seizure "if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." Amrine, 522 F.3d at 823. If a mistake is objectively reasonable as a matter of law, there is no Fourth Amendment violation, and the officers enjoy qualified immunity. Clay, 815 F.2d at 1169; see also Young v. City of Little Rock, 249 F.3d 730, 735 (8th Cir. 2001). For reasons already set forth, Officer Pavlak's reliance on the DNA match, even though it turned out to be wrong, was objectively reasonable as a matter of law.

There is no question plaintiff was arrested for a crime he did not commit. But neither law, logic, or the Constitution "guarantee[s] that only the guilty will be arrested." Baker, 443 U.S. at 149. While what happened to plaintiff is regrettable, it could have been avoided had the victim been truthful during the investigation. And while this very unfortunate and unnecessary event could have been avoided if the victim had been given plaintiff's name or shown his picture, this complaint does not state a claim for a Fourth Amendment violation.

B.  Claims Against the City and Chief Harrington

Plaintiff claims the City of St. Paul is liable for constitutional violations under Monell v. Department of Social

<u>Services</u>, 436 U.S. 658, 690-91 (1978).  Plaintiff also brings a claim against Chief of Police John Harrington.  Because plaintiff has not identified the capacity in which he sues Chief Harrington, the Court construes the claim as official-capacity only.  <u>See</u> <u>Johnson</u>, 172 F.3d at 535.  An official-capacity suit alleges either that the official took action pursuant to an unconstitutional government policy or custom, or that he "possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner."  <u>Nix v. Norman</u>, 879 F.2d 429, 433 (8th Cir. 1989).

Here, as already noted, the complaint fails to allege a cognizable constitutional violation.  For that reason alone, the City and Chief Harrington cannot be liable under § 1983.  <u>See</u> <u>C.N.</u>, 591 F.3d at 635.  In addition, plaintiff alleges no facts whatsoever from which a jury could infer an unconstitutional policy or custom by the City.

The claims against the City and Chief Harrington must be properly dismissed.

C. <u>State Law Claims</u>

Plaintiff brings various state law claims against Officer Pavlak, including negligence, intentional infliction of emotional distress, and defamation.  Having dismissed all the federal claims, the Court declines to exercise supplemental jurisdiction over those claims.

III. <u>Conclusion</u>

For the foregoing reasons, plaintiff's federal claims are dismissed. The Court declines to exercise supplemental jurisdiction over the state law claims.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 25, 2010


<u>s/ James M. Rosenbaum</u>
JAMES M. ROSENBAUM
United States District Judge